AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.  '21 MJ01982
AT&T Inc., 11760 U.S. Highway One, Suite 600, North )
Palm Beach, FL 33408 )
re: (408) 410-8738 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-3, incorporated herein by reference.

located in the _____Southern_____ District of _____Florida_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B-3, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Allie Peters, Special Agent HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 5/18/2021

_____
Judge's signature

City and state: San Diego, California      Hon. Karen S. Crawford, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A-3

## *Item to be Searched*

AT&T Inc. manages Cricket Wireless, which hosts the electronic communication account associated with the telephone number (408) 410-8738 that is one of the subjects of this search warrant and search warrant application ("Account 3").

AT&T is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 11760 U.S. Highway One, Suite 600, North Palm Beach, FL 33408.

## ATTACHMENT B-3

### *Items to be Seized*

I. **Service of Warrant**

The officer executing the warrant shall permit the Provider in Attachment A-3, as custodian of the electronic files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

IV. **Items to be provided by the Provider**

Agents shall seize the following records, data, and information covering November 1, 2020 up to and including December 8, 2020, and maintained by the Provider for the subject account identified in Attachment A-3:

  e. Subscriber information, including:
     i. Names;
     ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
     iii. Local and long distance telephone connection records;
     iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
     v. Length of service (including start date) and types of service utilized;
     vi. Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
     vii. Other subscriber numbers or identities; and
     viii. Means and source of payment (including any credit card or bank account number) and billing records.
  f. Records and other information about past wire or electronic communications sent or received by the subject account, including:
     i. the date and time of the communication;
     ii. the method of the communication;

      iii. the source and destination of the communication, such as the source and destination telephone numbers (call detail records), email addresses, or IP addresses; and

      iv. Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data communications;

which are evidence of violations of 21 U.S.C. §§ 952, 960, and 963, importation of cocaine and conspiracy to commit the same.

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Special Agent Allie M. Peters, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for information associated with the following phone numbers, (Collectively, the "Accounts"):

> LG Stylo 5 ("Target Phone 1") with phone number (669) 254-7259, serviced by T-Mobile US Inc. ("Account 1"), as described in Attachment A-1 and incorporated herein;

> Samsung Galaxy A01 ("Target Phone 2") with phone number (408) 561-9347, serviced by MetroPCS/T-Mobile US Inc. ("Account 2") as described in Attachment A-2 and incorporated herein; and

> iPhone ("Target Phone 3") with phone number (408) 410-8738, serviced by Cricket Wireless/AT&T Wireless ("Account 3"), as described in Attachment A-3 and incorporated herein

including subscriber information, telephone toll data, and cell-site geo-location information for the period of November 1, 2020 up to and including December 8, 2020. As set forth below, probable cause exists to believe the service providers' records for the Accounts contain evidence of violations of federal law, namely, importation of controlled substances and conspiracy to import controlled substances, in violation of 21 U.S.C. §§ 952, 960, and 963, as described in Attachments B-1 to B-3.

2. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile and AT&T to disclose to the government copies of the information further described in Attachment B. Upon receipt of the information described in Attachments B1-B3, government-authorized persons will review the information to locate items described in Attachment B1-B3.

3. This affidavit and these applications are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(a), which applies to providers of electronic communication services. In this case, as will be shown below, T-Mobile and AT&T provide electronic communication services in the form of cellular and wireless

telephone service for the Accounts. This Court has jurisdiction to issue this warrant because it is "a district court of the United States (including a magistrate judge of such a court)" that "has jurisdiction over the offense being investigated." 18 U.S.C. §§ 2703(c)(1)(A), 2711(3)(A).

## TRAINING AND EXPERIENCE

4. I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have been a Special Agent ("SA") with Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") since April 2019. I am assigned to a contraband smuggling group in San Diego, California which focuses on the importation of controlled substances on the southwest border. I am cross-designated and have the authority to conduct Title 21 investigations and enforcement activities.

5. As a federal law enforcement officer, I have received formal training, as well as extensive on-the-job training, relative to the investigation of controlled substances trafficking. I have investigated illicit narcotics, controlled substances, and other crimes that have resulted in arrests and convictions. As a result of these investigations, I have become familiar with methods and techniques used by narcotics traffickers to import narcotics into the U.S.

6. This affidavit is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, interviews, public records, database checks, searches, and other investigative techniques.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail

messages referring to the arrangements of travel and payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from text messaging cell phone applications such as WhatsApp, social networking messages, and videos reflecting co-conspirators or illegal activity.

8. The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Dates, times, and amounts are approximate.

## FACTS IN SUPPORT OF PROBABLE CAUSE

9. On December 8, 2020, at approximately 12:16 PM, Tahra Venece CHAVEZ Hijar, ("CHAVEZ"), a United States citizen, applied for entry into the United States from Mexico through the San Ysidro Port of Entry in vehicle lane number 21. CHAVEZ was the driver, sole occupant, and registered owner of a 2003 Dodge Ram ("the vehicle") bearing California license plates.

10. A Canine Enforcement Team was conducting pre-primary operations when the Human and Narcotic Detection Dog alerted to the hood of the vehicle.

11. A Customs and Border Protection Officer received two negative Customs declarations from CHAVEZ. CHAVEZ stated she was crossing the border to go to San Jose, California.

12. A CBPO operating the Z-Portal X-Ray machine detected anomalies in the battery of the vehicle.

13. Further inspection of the vehicle resulted in the discovery of 6 packages

concealed in the battery of the vehicle, with a total approximate weight of 3.32 kilograms (7.31 pounds). A sample of the substance contained within the packages field tested positive for the characteristics of cocaine.

14. CHAVEZ was placed under arrest at approximately 2:00 PM.

15. During a post-Miranda interview, CHAVEZ denied knowledge that the narcotics were in the vehicle. CHAVEZ stated that she went to Mexico to obtain a signature from her husband, Amol Dnyaneshwar MHATRE. CHAVEZ stated said that she left the vehicle parked at a hotel in Tijuana for around ten hours. CHAVEZ claimed to have noticed that her car was having trouble starting.

16. CHAVEZ was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

17. On December 9, 2020, Magistrate Judge Jill L. Burkhardt found probable cause to charge Defendant in a complaint with Importation of Cocaine, in violation of Title 21, United States Code, Sections 952 and 960 in Southern District of California Case Number 21-CR-00068-GPC.

18. At the time of arrest, several cell phones, including Target Phones 1, 2, and 3, were found among CHAVEZ' personal property. CHAVEZ stated that Target Phones 1, 2, and 3 belonged to her. CHAVEZ denied consent to search the cell phones. Upon application of the United States, Magistrate Judge Burkhardt authorized search warrants to search Target Phones 1, 2, and 3 on December 9, 2020. A forensic extraction of the data contained on Target Phones 1, 2, and 3 was obtained. Among other items, Target Phones 1, 2, and 3 contained pictures, a call log, and text-based communications that tended to demonstrate Target Phones 1, 2, and 3 were used up until the day of arrest.

19. Information extracted from Target Phone 1 reflected that the associated phone number was (669) 254-7259 ("Account 1"). Based on my review of law enforcement databases, the provider for Account 1 is T-Mobile US, Inc. Information extracted from Target Phone 2 reflected that the associated phone number was (408) 561-9347 ("Account

2"). Based on my review of law enforcement databases, the provider for Account 2 is MetroPCS, Inc., which is managed by T-Mobile US, Inc. Information extracted from Target Phone 3 reflected that the associated phone number was (408) 410-8738 ("Account 3"). Based on my review of law enforcement databases, the provider for Account 3 is Cricket Wireless.

20. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe CHAVEZ and other co-conspirators were engaged in a conspiracy to smuggle narcotics into the United States from Mexico. I also believe the co-conspirators, including CHAVEZ, used cellular phones to communicate and coordinate the importation of narcotics. For example:

- On November 9, 2020 at 4:52 p.m., CHAVEZ messaged a contact (number 14086006290) "I can't find a ride I'm gonna have to call my boss and tell him to help me." The recipient of the text responded at 5:13 p.m., "Who the fuk is your boss[?]" CHAVEZ responded at 5:21 p.m., "***What do u mean who is my boss***" and "***The person who's car I'm driving[.]***" (emphasis added).
- On November 10, 2020, CHAVEZ messaged with a contact saved as "Flako" (14087915606), "Spent two days charging the battery for bmw" and "So u have an extra one now lol."
- From November 13 through 15, 2020, CHAVEZ exchanged messages with a contact saved as "Flako2" (number 14089151502) to coordinate a trip to Mexico. On November 13, 2020 at 12:30 p.m., Flako2 messaged, "Gorge he speak inglish god call when you arrive tijuana please[.]" CHAVEZ responded at 6:17 pm, "There is alot of trFfic it set time back drastically[.]" Between 6:54 pm and 8:37 p.m., Flako2 messaged CHAVEZ multiple times "Tara" and "Call me[.]" At 8:40 p.m., CHAVEZ responded, "He has to call m3 cause the phn wont letme call him" and Flako2 responded "Ok[.]" At 8:51 pm, CHAVEZ messaged, "I have 6 percent charge im headed straight to and ill be there. Im sorry there was alot of traffic and construction and i took 101 which was longer . ***Im not trying to mess this up the charge in car***

*needs to be fixed it threw off the phone battery*" and "Ill be there theres nothing to worry of i will stay as long as they need me too." (emphasis added).

- From 9:51 p.m. on November 13, 2020 and 12:19 pm on November 14, 2020, CHAVEZ and Flako2 exchanged messages discussing hotel arrangements, and calling George. TECS records reflect that CHAVEZ crossed into Mexico on November 14, 2020 at 1:31 p.m. and back into the United States on November 15, 2020 at 6:12 p.m.

- On November 15, 2020 at 10:38 p.m., after returning to the United States, CHAVEZ messages Flako2 the address of the hotel she is staying at in Garden Grove, California. At 11:41 pm, CHAVEZ messages Flako2, "When will the trick be taken[?]" and Flako2 responds, "Tomorrow in the morning." CHAVEZ replies at 11:44 pm, "Can thwy take it now" "I dnt have a good feeling about it alone[.]"

- Between November 17, 2020 and December 2, 2020, CHAVEZ sends Flako2 messages appearing to coordinate additional trips to Mexico and requesting permission to have certain work performed on the vehicle. For example, on November 26, 2020 at 10:02 a.m., CHAVEZ messages Flako2, "Ok i am starting to plan the trip and i cant with out funds. Im not trying to bother but its thanksgiving and I am still going 5oday[.]" On November 28, 2020 at 7:35 p.m., CHAVEZ messages Flako2, "I have made my schedule open since this last Tuesday. I didnt spend Thanksgiving withmy kids because i wanted to be ready when u called.Normally your good at calling me and keeping me informed. But lately no. All I ask is to be kept in the loop[.]"

- On December 5, 2020 at 11:25 p.m., CHAVEZ messages Flako2, "Hi I am in San Diego so I can meet anytime there ready[.]" At 2:27 p.m., CHAVEZ messages Flako2, "?" On December 6, 2020 at 9:56 a.m., CHAVEZ messages Flako2, "Good morning is there a time[?]"

- TECS records reflect that CHAVEZ crossed into Mexico on December 7, 2020 at 11:58 a.m. and back into the United States the same day at 2:58 p.m. TECS records

further reflect that CHAVEZ crossed into Mexico again on December 8, 2020 at 12:27 a.m. and back into the United States the same day at 12:18 p.m., at which time she was arrested for the instant offense.

21. Based on my training and experience and consultation with other law enforcement agents, I am also aware that the forensic download of a cell phone does not always capture all calls, texts, and other communication that may have occurred on the Accounts during a given time period, including, for example, if the user deleted content from the phone. In this case, based on my review of the extractions of Target Devices 1-3, I believe data was deleted or not fully captured from each device. I believe the information regarding phone numbers the Accounts were in contact with during the relevant period of time may reveal other accomplices and co-conspirators engaged in narcotics smuggling. Additionally, I believe that historical geolocation data from the Accounts used may identify travel to or locations involved in the importation of cocaine or other federally controlled substances, such as delivery points, stash houses, or load houses, and may assist in identifying co-conspirators.

22. Based on my training and experience, and my consultation with other law enforcement officers, I am aware that T-Mobile and AT&T routinely collect and store data for the electronic communication accounts to which it and other providers issue telephone numbers. The data includes: (i) subscribers' contact and billing information; (ii) detailed information concerning subscribers' incoming and outgoing telephone calls; (iii) detailed information concerning subscribers' outgoing direct calls, text message, and SMS messages; and (iv) detailed information concerning cell-site geo-location data.

23. In particular, I know that cell phones connect to a provider's network through cell towers or cell sites. The particular tower or site may change as a phone moves from one location to another. Providers automatically record and retain this connection data as part of the subject account. Records and data identifying the towers or sites to which a phone connected therefore tend to identify the phone's and phone user's location at particular times.

24. In my training and experience, I have learned T-Mobile and AT&T are companies that provide cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including Cell Site Location Information (CSLI), also known as "tower/face information" or "cell tower/sector records." CSLI data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, CSLI data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or GPS data.

25. I also know that different providers use the speed with which signals travel between cell phones and cell towers ("per call measurement data," or "PCMD"), as well as other data, to better calculate and record the location of phones accessing their networks. Different providers may use different terminology to describe PCMD. For example, AT&T has referred to the resulting location information as "NELOS" data and T-Mobile, as "timing advance" data.

26. In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Additionally, in this case, CHAVEZ has limited border crossing history.

CHAVEZ has six crossings into the United States in the past eighteen months. She began crossing the vehicle on November 1, 2020 and crossed the vehicle into the United States four times before her arrest. Accordingly, this application requests such per call measurement data (by whatever name the provider uses) for the Account for the following date and time range: November 1, 2020 (the date she began crossing the vehicle) up to and including December 8, 2020 (the date of arrest).

27. Given these facts, I seek a warrant to search the Account for the record and information in Attachment B.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

28. As described above, the United States obtained warrants to attempt and/or complete forensic downloads of Target Phones 1, 2, and 3 but is unaware at this time of other attempts by the U.S. government to obtain this data by other means.

### CONCLUSION

29. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

30. Based upon my training and experience, consultation with other law enforcement officers experienced in narcotics investigations, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the Accounts to be seized, as set forth above and in Section I of Attachments B1-B3, will be found in the locations described in Attachments A1-A-3, and will contain evidence of violations of 21 U.S.C. §§ 952, 960, and 963. Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent, to order T-Mobile and AT&T to search its corporate records for the Account and to order T-Mobile and AT&T to deliver the Accounts listed in Attachment B1-B3.

Allie Peters, Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 18th day of May, 2021.

HON. KAREN S. CRAWFORD
United States Magistrate Judge